UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.:

ASPEN SPECIALTY INSURANCE
COMPANY, a foreign corporation
licensed to do business in the State
of Florida,

    Plaintiff,

vs.

GRAND VIEW AT CRESTWOOD
CONDOMINIUM ASSOCIATION, INC.,
A Florida corporation,

    Defendant.
_____/

## PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, ASPEN SPECIALTY INSURANCE COMPANY, a foreign corporation authorized to do business in the State of Florida, by and through its undersigned attorneys and files this Complaint for Declaratory Relief, stating as follows:

1. This is an action filed pursuant to 28 U.S.C. Section 2201, known as the Federal Declaratory Judgment Act.

2. Plaintiff, ASPEN SPECIALTY INSURANCE COMPANY (hereinafter "ASPEN"), is a surplus lines insurance carrier that is incorporated in North Dakota and has its principal place of business in Connecticut.

3. At all times material hereto, ASPEN was and is duly qualified to do and transact business in the State of Florida.

4. Defendant, GRAND VIEW AT CRESTWOOD CONDOMINIUM ASSOCIATION, INC. (hereinafter "GRAND VIEW") is the ownership association for the insured condominium property located in Royal Palm Beach, Palm Beach County, Florida.

5. To the knowledge and belief of Plaintiff, the Defendant at all times material hereto, was and is a citizen of the State of Florida.

6. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.

7. This court has diversity of jurisdiction pursuant to 28 U.S.C. Section 1332.

8. An actual controversy of a judicial nature exists between Plaintiff and Defendant, who are citizens of different states, involving rights and liabilities under a policy of property insurance, and dependent upon the construction of said contract of property insurance, said controversy may be determined by a judgment in this action, without the necessity of additional lawsuits.

## COMMON ALLEGATIONS

9. ASPEN issued a Commercial Residential Property Policy, Number PP002053, to GRAND VIEW for the condominium property located at 50 Crestwood Court; 100-600 Crestwood Court North; and 700-1700 Crestwood Court South, North Royal Palm Beach, Palm Beach County, Florida, with effective dates of February 21, 2005, through February 21, 2006. (A certified copy of the policy is attached as **Exhibit A**.)

10. GRAND VIEW alleged that the property sustained damage as a result of Hurricane Wilma on or about October 24, 2005.

11. GRAND VIEW did not report the alleged Hurricane Wilma loss to ASPEN until July 20, 2009, approximately three years and nine months after the loss.

12. ASPEN assigned the independent adjusting firm Associated Claims Management, Inc. (hereinafter "ACM") to investigate the alleged Hurricane Wilma loss on July 20, 2009.

13. ACM sent a letter (dated July 29, 2009) to the insured on August 17, 2009, requesting documentation necessary to fully evaluate the claim, noting non-compliance with two of the policy's duties-after-loss requirements; informing that ASPEN was reserving its rights accordingly; requesting a signed sworn statement in proof of loss; requesting unit owners complete a "Unit Owner Damage Survey"; and informing of ASPEN's desire to perform an examination under oath of the principles of GRAND VIEW and its representatives on October 28, 2009.

14. GRAND VIEW's public adjuster, Derek Segal of Five Star Claims Adjusting, thereafter provided ASPEN with a Sworn Statement in Proof of Loss reflecting the full cost of repair or replacement as $3,417,520.75, and with the net amount claimed of $2,804,950.75.

15. GRAND VIEW's public adjuster, Five Star Claims Adjusting, has represented to ASPEN that all the roofs of the seventeen commercial residential buildings, the clubhouse, and the pool house, require complete replacement due to alleged wind damages from Hurricane Wilma, by presenting an estimate of damages for total roof replacements of all these buildings, for an estimated $3,417,520.75 (the same amount as the full cost of repair or replacement reflected in the proof of loss.)

16. ASPEN advised, in a letter from ACM to the insured dated November 2, 2009, that it was unable to accept or confirm the October 12, 2009, proof of loss submitted by the insured, because the amounts claimed for repair costs did not correspond to any combination of estimates and invoices submitted to date; ACM had recently received a large amount of documentation related to the association and was still evaluating that documentation; the evaluation to date has revealed a need for additional documentation not previously provided by the insured; ACM has not been permitted to complete a full inspection of the property; and there are outstanding examinations under oath needed to evaluate the Proof of Loss.

17. GRAND VIEW represented on a subsequent application for insurance with another insurance company, on January 19, 2006, that it had not experienced any claims or occurrences that may give rise to claims for the previous five years.

18. GRAND VIEW contemplated a lawsuit against its developer for numerous items, including deficiencies with the roofs.

19. It was not until the statute of limitations for a lawsuit against the developer had passed, that GRAND VIEW decided to make a claim for alleged Hurricane Wilma damages.

20. GRAND VIEW had an engineering company, S&D Engineering and Construction, Inc., inspect their properties on March 31, 2007, for deficiencies related to a contemplated lawsuit against the developer of the properties.

21. S&D Engineering and Construction, Inc. prepared a "Cost Estimate for Deficiencies" table, in connection with its inspection of the properties, which reflected that there were $34,575 in repairs needed for wind damage to the roofs, gutters, and downspouts.

22. ASPEN retained an engineering company, Applied Building Science, Inc. ("ABS"), to inspect the roofs.

23. ABS' professionals — L.Edward Polk, RRC; M. Joseph Shahid, P.E.; and Paul W. Kennedy, Associate AIA — inspected the buildings on January 6, 7, and 8, 2010.

24. The ABS professionals observed that each of the roofs have localized areas of tile repair.

25. ABS observed evidence of various roofing repairs, including replacement of multiple tiles within an area, isolated sealant repairs of damages likely due to foot traffic, thermal expansion, or impact damage.

26. ABS also observed isolated broken field tiles and missing ridge/hip tiles.

27. ABS further observed areas where the underlayment on the roof is deteriorated due to missing roof tiles.

28. ABS concluded that the localized areas of damaged tile can be repaired and do not warrant total roof replacements, because the subject tile is still available from the manufacturer.

29. ACM's inspection of the roofs revealed only minor physical damage to the roofs, which can be repaired and does not require complete replacement of the roofs.

30. Furthermore, due to the passage of time since Hurricane Wilma, ABS noted that it is impossible to determine the cause of loss of the damages to the roofs.

31. The subject policy of insurance provides for a named hurricane deductible for each building equal to three percent of the total insured value of that building as scheduled, with a minimum per-occurrence deductible of $100,000.00. (See Policy at **Exhibit A**.)

32. To date, GRAND VIEW has failed to establish that it sustained covered damages to any of the covered buildings in excess of the subject policy's deductible.

## COUNT I

## FAILURE TO GIVE TIMELY NOTICE AND FULLY COMPLY WITH CONDITIONS AND OBLIGATIONS UNDER THE POLICY

Plaintiff realleges and reincorporates Paragraphs 1 through 32 and further states:

33. That the subject policy provides in pertinent parts as follows:

### CONDOMINIUM ASSOCIATION COVERAGE FORM

. . .

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

…

**3. Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

   …
   (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
   (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
   (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damages resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

Condominium Association Coverage Form CP 00 17 04 02, p. 8 of 14.

34. ASPEN asserts that GRAND VIEW's three-year nine-month delay in reporting their alleged Hurricane Wilma damages violated the Loss Conditions, Duties-in-the-Event-of-Loss-or-Damage section of the subject policy, and prejudiced ASPEN's investigation and adjustment of the claim.

35. GRAND VIEW has failed to mitigate its losses, by failing to repair missing and broken roof tiles.

36. GRAND VIEW should be barred from receiving any monies from ASPEN due to its violations of the above-referenced policy provisions.

## COUNT II

## GRAND VIEW HAS FAILED TO SHOW THAT ITS LOSSES EXCEED THE APPLICABLE DEDUCTIBLE

ASPEN realleges and reincorporates Paragraphs 1 through 32 and further states:

37. The policy contains the following language.

> **CONDOMINIUM ASSOCIATION COVERAGE FORM**
> ...
> **D. Deductible**
>
> In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.
>
> When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

38. The documentation presented to date by GRAND VIEW in support of its claim does not establish that the alleged wind damage to the roofs was caused by Hurricane Wilma.

39. The documentation presented to date by GRAND VIEW in support of its claim does not establish that the roofs require total replacement as opposed to repairs.

40. Also, GRAND VIEW has presented documentation for repairs, without supporting documentation to show that those repairs were for damages caused by Hurricane Wilma.

41. In fact, the documentation submitted by GRAND VIEW shows that its own engineer, S&D Engineering and Construction, estimated in April 2007 that the roof damages – regardless of the cause of loss – could be repaired for only $34,575.00.

42. The policy contains a *minimum* deductible per occurrence for windstorm or hail of $100,000.00, with a three-percent-per-building Total Insured Value, as is reflected in the Schedule of insured buildings at Exhibit A, the policy.

43. The Declarations Pages of the Policy provides, in pertinent part, as follows:

 Aspen Specialty

**Summary of Insurance and Special Provisions**
ASPPR011A

Locations:            As per schedule on file with the Company

Occurrence Limits:    $5,000,000

Occurrence Sub-Limits[1]:  Values as per schedule as submitted and on file

$1,000,000                            Ordinance/Law (A, B & C combined)

Per Occurrence and in the Aggregate Sub-Limits[2]:

EXCLUDED COVERAGE        For the peril of Flood
EXCLUDED COVERAGE        For the peril of Earthquake

Deductibles/Attachment of Coverage:

The following deductible amounts shall apply to each claim for loss or damage under this Policy in respect to the loss category indicated:

| Peril | Attachment | Per | Minimum per Occ |
|---|---|---|---|
| All Other Perils (AOP) | $5,000 | Occurrence | $ |
| Windstorm/Hail | 3% per building TIV as scheduled | Occurrence | $100,000 |

44. GRAND VIEW has not yet shown that its alleged wind damages exceed the *minimum* $100,000 deductible or the applicable deductible per building.

## COUNT III

### APPRAISAL IS INAPPROPIRATE

Plaintiff realleges and reincorporates Paragraphs 1 through 32 and further states:

45. With respect to appraisal, the subject policy provides in pertinent parts as follows:

Condominium Association Coverage Form
...
E. Loss Conditions
...
2. Appraisal.

9

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny a claim.
>
> Condominium Association Coverage Form CP 00 17 04 02 (2001), p. 8 of 14.

46. GRAND VIEW has failed to comply with the policy conditions as alleged above and therefore appraisal is inappropriate.

47. GRAND VIEW has failed to establish that there is a dispute as to the amount of loss caused by Hurricane Wilma, or that the amount of loss exceeds the applicable deductible.

48. Moreover, ASPEN alleges that this case presents coverage issues that make appraisal inappropriate.

WHEREFORE, Plaintiff, ASPEN requests that this Court take jurisdiction of this matter and declare the rights and duties of the parties herein; and that this Court adjudicate and declare that there is no coverage under the terms and conditions of the subject insurance contract issued by ASPEN to GRAND VIEW for the loss claimed; and that ASPEN is not obliged to indemnify GRAND VIEW for said loss, and that appraisal is not appropriate in this instance.

## DEMAND FOR JURY TRIAL

Plaintiff, ASPEN demands trial by jury on all issues so triable.

**DATED** this 2nd day of September, 2010.

> BOEHM, BROWN, FISCHER, HARWOOD,
> KELLY & SCHEIHING, P.A.
>
>
> */s/ Marjorie M. Salazar*
> MICHAELA D. SCHEIHING, ESQUIRE
> Florida Bar Number 0931853
> MARJORIE M. SALAZAR, ESQUIRE
> Florida Bar Number 0939021
> Post Office Box 11830
> Daytona Beach, Florida  32120
> 386-258-3341
> 386-258-0252 - Facsimile
> Attorneys for Plaintiff